[Crim. No. 3769. In Bank.—October 2, 1934.]

THE PEOPLE, Respondent, v. GIOVANNINA GRANA, Appellant.

Harold A. Fendler, Frank L. Kostlan and Le Roy Anderson for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, Frank W.

Stafford, Deputy District Attorney, and A. H. Van Cott, Deputy District Attorney, for Respondent.

THE COURT.—Upon defendant's appeal the District Court of Appeal, Second Appellate District, Division Two, reversed the judgment of conviction of grand theft entered against the appellant. The People, through the attorney-general, petitioned this court for a hearing, which was granted. Upon examination of the record and the authorities we are satisfied that the opinion prepared by Mr. Presiding Justice Stephens correctly disposes of the cause and we therefore adopt that opinion as and for the decision of this court. It reads:

"Mrs. Giovannina Grana was charged in eleven counts with the crime of grand theft by a grand jury indictment filed December 22, 1932. A jury was waived and convictions were had on six counts. The others have been dismissed. The dates of the thefts and the sums involved in the former counts are as follows: Count I, December 11, 1928, $260; count II, December 11, 1928, $700; count IV, March 16, 1929, $962.50; count V, April 25, 1929, $540; count VIII, April 5, 1929, $2,000; count X, September 20, 1929, $928. After the denial of a motion for new trial the court sentenced defendant to state's prison on each count upon which there had been a verdict of conviction, and provided that the sentences should run concurrently. The defendant appeals from the judgments.

"Appellant, Mrs. Grana, and Mrs. Maria Vitagliano first met at their church in 1923. The latter was the owner of several valuable real estate properties. The foundation of the fortune was the profit from a small store in which Mrs. Vitagliano invested a small sum. Both she and her husband 'kept store'. Mrs. Vitagliano could neither read nor write. She knew the separate numerals, but did not, she testified understand any combinations thereof. She knew that two five-dollar bills equaled ten dollars, and could make change. She could write her name, but that was all. Some time prior to this first meeting the husband had disappeared and a daughter, Christine, had assumed the responsibility of handling the funds and properties. The acquaintance between the elder women grew into friendship, and eventually, after advising Mrs. Vitagliano that the daughter was not

properly handling her affairs, appellant assumed this duty through the years 1926 to 1929, inclusive. In the course of time dissension between the friends broke the arrangement. During the latter part of 1929 the two had words, and Mrs. Vitagliano brought a civil suit for accounting against appellant. The suit was not tried, but on December 16, 1929, a document called 'release' was signed by both parties which on its face purports to settle their financial troubles. A will dated January 24, 1929, was signed by Mrs. Vitagliano in which appellant is spoken of in warm terms of affection and appreciation. It mentions that appellant had loaned the maker money on various occasions. And although these documents speak of peace, there was, in fact, no peace between the erstwhile friends, and the difficulty reached a climax in the indictment by the grand jury already mentioned.

"In the grand jury proceedings and later during the trial Mrs. Vitagliano was the complaining witness and is referred to generally in all of the proceedings as the 'prosecutrix'. This term may not be accurate, but for brevity we shall adopt it herein.

"The People's case rests upon the theory that appellant collected rentals and deposited them in prosecutrix's bank account; that in the course of this business appellant presented certain checks to prosecutrix for signature which were not drawn to cover any payment for or advance to the latter, but, unknown to prosecutrix, were drawn to appellant, and that they, or the money for which they were drawn, reached appellant's own bank account.

"Appellant argues her appeal under three separate points, but says in her opening statement of facts that the primary point for consideration is that 'there is no substantial evidence to support her conviction'. We think the case must be disposed of by treatment of this subject alone.

"From the evidence, and we have read the whole of the transcript, it would appear that the arrangement between prosecutrix and appellant whereby the latter should assume some part of the management of the properties was very loose. In practice it would appear that the money coming into the estate was collected by appellant and deposited in bank to prosecutrix's account, and that the bills received for operation of the estate were handled by appellant, who

would make out checks drawn upon prosecutrix's account for their payment which, after signature by the latter, would be dispatched. There is sharp conflict as to whether the signatures were generally affixed to blank checks or to checks with the payees' names and the sums written in. For this responsible service the compensation, if any was to be paid appellant, is one of the unexplained items of the case. There is an indirect mention of $150 per month, and there is the testimony of the prosecutrix that appellant said it was for the Lord's sake. There do not seem to have been any books of account, though appellant says and prosecutrix denies that the two would sit down and go over the bills and that prosecutrix always knew the condition of her account and of her affairs. A view of the whole case shows a confused condition of affairs and inconsistent actions on the part of prosecutrix. In the will hereinbefore referred to is written a statement of great affection from prosecutrix to appellant and a statement that appellant had loaned prosecutrix money. A civil suit for accounting was then pending, although there had been a document signed by both parties whereby the total sum of $2,122.50 had been paid to prosecutrix by appellant and each party released from all further financial liability each to the other. Prosecutrix testifies that she had no understanding of this document and did not know it purported to be a mutual release, and that she knew nothing of the contents of the will except that the names of her children were read to her from the document. Appellant was with prosecutrix at a bank when some conversation about a release was had, and the two went to an attorney's office where the document was prepared and signed. In the instances of both the will and the release there is positive testimony by responsible lawyers and other third parties that the documents were carefully read and explained to prosecutrix. She insists, however, that she does not remember this and that she did not suggest, approve or know that appellant was mentioned in the will, and that she did not know of or intend to sign a release or settlement of the financial troubles of the two. Mrs. Vitagliano was 67 years old, not well and was highly nervous at the time of the trial.

"There was no attempt at an accounting in the trial, although ledger sheets of bank accounts of both prosecutrix

and appellant are in evidence. The withdrawals from prosecutrix's bank and the ledger sheets of appellant show that the latter checked from prosecutrix's bank to her own in the sums mentioned in the six counts upon which conviction was had. It is true there were payments by appellant from her account covering very nearly if not all of such sums. In the matter of payment of taxes this is substantiated by canceled checks; and prosecutrix admits that she requested appellant to pay them, but explains that she merely asked that this be done in the regular course out of her own funds.

"Prosecutrix's testimony shows numerous inconsistencies, contradictions and palpable misstatements. She does not accuse appellant of taking any specific sum or sums of money from her, and does not say that appellant converted any funds to her own use. In fact, a statement made by one of appellant's attorneys during the trial is almost literally true: 'You can go through all of her [prosecutrix's] testimony and it is negative.' All of the alleged embezzlements antedate the 'release'.

"The trial of criminal cases before a judge without a jury has given rise to novel theories, one of which is advanced herein by appellant. In civil nonjury cases the judgment is based upon findings of fact and conclusions of law, and in civil and criminal jury cases the jury considers the facts and applies the law as given it by the court. But where the judge alone decides a criminal case nothing of this nature intervenes between the evidence and the judgment. Appellant here scans the case for remarks of the court during trial and quotes from the court's written reasons for adjudging her guilty. Her counsel argue, in effect, that such remarks and such written reasons may be considered as though the judge had made them to the jury, since the judge is the trier of facts. It seems clear to us that neither the court's remarks during trial nor his concluding 'opinion' can be resorted to on appeal in any way as findings, conclusions of law, instructions or remarks as though to a jury. When a defendant in a criminal case waives a jury he agrees that the judge shall try both law and fact according to the legal machinery at hand therefor. Any appeal therefrom is based upon the record. The judge's opinion may be of use to the appellate court as an aid to a proper understanding of the case, but it is not, strictly speaking, a part of the record.

In the course of the trial the court may entertain an erroneous opinion as to the law and tentative but wrong opinion as to fact, and give expression thereto. None of these matters have any place upon appeal. ■ In a criminal case tried by a judge alone an appellate tribunal will affirm or reverse the judgment of conviction upon errors of law alone. If errors of law in admitting or rejecting evidence have prevented a fair trial, or if the evidence does not support it, the judgment of conviction will be reversed. The court will not examine the trial court's remarks to discover whether or not it mentally applied the correct law as the case unfolded itself, or whether after completion of the evidence and argument it applied the correct law or reasoning in arriving at a judgment. The case of *People* v. *Tapia,* 131 Cal. 647 [63 Pac. 1001], is authority for the several points made in this paragraph. In the course of its opinion the trial court used the following language: 'I begin by quoting the following statement made by Mr. Justice Cardoza in a New York case (*Meinhard* v. *Salmon,* 249 N. Y. 459 [164 N. E. 545, 62 A. L. R. 1]) : ''Many forms of conduct permissible in a work-a-day world for those acting at arm's length are forbidden to those bound by fiduciary ties. . . . Not honesty alone, but the punctilio of an honor most sensitive is then the standard of conduct.'' ' It is clear, therefore, that notwithstanding the above was, as argued by appellant, a correct rule as to a civil procedure and not as to a criminal procedure, it in nowise affects the consideration of the appeal. We do not mean to intimate that the trial judge intended or did apply the principle of the Cardoza quotation to the decision of the instant case. He used the quotation merely as an illustration of the strict conduct required of a fiduciary.

''The proven unreliability of prosecutrix's testimony, together with its negative nature, renders it practically of no value whatever. (See *People* v. *Tapia, supra.*) ■ We think the evidence shows that there was some, we do not know how much, commingling of accounts; that appellant, in the instances mentioned, checked from prosecutrix's account to her own, and that while there is evidence that much of said money was for the repayment of advances theretofore made for the prosecutrix, there is no evidence that any thereof was ever converted to the use of appellant. 'It is

sometimes held in civil cases that the deposit by a trustee of trust funds to his personal account is sufficient cause for charging him with interest; but such fact alone is not sufficient evidence to convict a man of felony.' (*People* v. *Royce,* 106 Cal. 173 [37 Pac. 630, 39 Pac. 524].)

''In conclusion, we desire to refer to the fact that there is some evidence in the case that the title to one of prosecutrix's properties was transferred to appellant and later transferred back to prosecutrix. No details of or reasons for this are given, nor is the relevancy shown in any way. Certainly there is no evidence that there was anything improper in the transaction. There is much vague and unrelated evidence in the case, and this conclusively establishes the fact that the trial judge was not given the advantage of a full disclosure as to the actual relations between prosecutrix and appellant. It would seem very possible that the working arrangement between the two women friends was not as simple as the mere collection of rentals and the drawing of checks incident to upkeep of the properties. In justice to the district attorney we may assert our appreciation of the fact that the difficulties besetting the prosecution of this case are much more apparent in retrospection than before the trial.''

The judgment as to each count upon which a conviction was obtained is reversed.