Filed 9/26/14  P. v. Hernandez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS IVAN HERNANDEZ,<br><br>    Defendant and Appellant. | B253717<br><br>(Los Angeles County<br>Super. Ct. No. VA123752) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John A. Torribio, Judge.  Affirmed.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant Jesus Ivan Hernandez.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, David Glassman, Timothy M. Weiner and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Jesus Ivan Hernandez (Hernandez) appeals from the judgment following his conviction for aggravated sexual assault upon his preteen daughter. He contends that there was insufficient evidence to support the trial court's finding of duress and that the trial court based its finding on a legally incorrect theory. He also contends the trial court failed to award him the proper presentence custody credits. We affirm the judgment, finding the custody credit claims moot and the other contentions without merit.

## FACTS AND PROCEDURAL HISTORY

**Prosecution Case**

In 2009, when V.H. was eight years old, she was sexually assaulted by Hernandez, her father. She had fallen asleep in her parents' bed and when she awoke Hernandez was removing her clothes. He turned her onto her stomach and inserted his penis into her anus. V. cried and said it "hurt so bad." She tried to push him off but he held her down. Hernandez told V. not to tell her mother what he had done.

In 2010, V.'s mother started taking Zumba classes five nights a week. While she was gone to class, Hernandez sexually assaulted V. He took V. into the bathroom, bent her over the toilet and inserted his erect penis into her anus. Hernandez admitted doing this on two separate occasions.[1] V. said it hurt at first but it happened so many times that it stopped hurting. Hernandez also admitted taking V. into his bedroom and showing her pornographic videos on his iPod. While watching the videos, Hernandez used his right hand to touch V.'s vagina. He used two fingers to open her vagina and then inserted one finger inside her vagina. V. said Hernandez did this to her at least once or twice a week, and it hurt.

V. was 12 years old at the time of trial and "very slight of frame." Hernandez weighed 210 pounds at the time of his arrest. At trial, V. was very reluctant to testify about the details of the sexual assaults. She repeatedly said she "didn't want to talk about it" and did not "feel comfortable talking about it." She testified that she loved her father

---

[1]     Hernandez's interview with the arresting detective was admitted into evidence.

2

and missed him and talking about what he did made her sad and hurt her heart. V. did not tell anyone at first about the sexual assaults because she was scared that her father would be taken away. V. did not want Hernandez to do the things he did to her and she asked him to stop but felt helpless as it was happening.

**Defense Case**

Appellant did not testify or present any evidence in his defense.

**Procedural History**

Following a bench trial, Hernandez was convicted of three counts of aggravated sexual assault upon a child, sodomy (Pen. Code, § 269, subd. (a)(3), counts 1, 3, and 5),[2] and one count of aggravated sexual assault of a child, sexual penetration (§ 269, subd. (a)(5), count 7). The trial court acquitted Hernandez of 10 other counts of sexual assault of a minor. Hernandez was sentenced to 60 years to life in state prison. The trial court imposed various fines and court fees and awarded appellant 372 days of presentence custody credit.

## DISCUSSION

**I. Sufficiency of Evidence of Duress**

*A. Contention*

Hernandez claims the evidence of duress was insufficient to support his convictions for the forcible sexual assaults in counts 3, 5, and 7. Hernandez does not challenge the sufficiency of the evidence for his conviction on count 1.

*B. Standard of Review*

Our review of any claim of insufficiency of the evidence is limited. We examine only "'. . . whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. . . .' [Citation]" (*People v. Assad* (2010) 189 Cal.App.4th 187, 194.) We review the evidence in the light most favorable to the verdict and assess solely

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

3

whether the supporting evidence is "'. . . reasonable, inherently credible, and of solid value . . . .'" (*Ibid.*)

### C.    *The Trial Court's Findings*

After argument by counsel and having reviewed the applicable law, the trial court stated the People had "proven all the elements that they [had] addressed in their argument."  The court stated "that under the facts of [the] case" it was "compelled" to find Hernandez guilty in counts 1, 3, and 5, of aggravated sexual assault of a child (sodomy) in violation of section 269, subdivision (a)(3), and in count 7 of one count of aggravated sexual assault (sexual penetration) in violation of section 269, subdivision (a)(5).  In making its ruling, the trial court found that "there were no direct threats or implied threats of force except for count 1."

### D.    *Relevant Law*

When a defendant uses "force, violence, duress, menace, or fear" to accomplish sodomy or sexual penetration of a child under the age of 14, the defendant is guilty of the elevated crime of sexual assault.  (§ 267, subds. (a)(3), (5), referencing §§ 286, subd. (c)(2); 289, subd. (a).)

"[T]he legal definition of duress is objective in nature . . . ."  (*People v. Soto* (2011) 51 Cal.4th 229, 246 (*Soto*).)  Duress means "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*Id.* at p. 246, italics & fn. omitted.)

Duress can arise from the relationship between the defendant and the victim and their relative ages and sizes, where the defendant is a family member and the victim is young, the position of dominance and authority of the defendant, and the continuous exploitation of the victim.  (*People v. Schultz* (1999) 2 Cal.App.4th 999, 1005.)  Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation

4

would result in jeopardizing the family. (*People v. Veale* (2008) 160 Cal.App.4th 40, 46 (*Veale*).)

The parent-child relationship does not, as a matter of law, establish force or duress. (*People v. Cochran* (2002) 103 Cal.App.4th 8, 16, fn. 6 (*Cochran*), disapproved on another ground in *Soto, supra,* 51 Cal.4th at p. 248, fn. 12.) "Nonetheless, as a factual matter, when the victim is as young as [nine years old] and is molested by her father in the family home, in all but the rarest cases duress will be present." (*Cochran*, *supra*, at p. 16, fn. 6.)

### E.     Analysis

Sufficient evidence confirms Hernandez committed the acts with duress. Duress arose from Hernandez's parental relationship with V. and his position of dominance and authority, his older age and greater size, his continuous exploitation of V., and her fear that disclosure of the abuse would result in some kind of hardship.

Hernandez controlled V. at her young age. He is her biological father. He began molesting her when he was 37 years old, and V. was eight years old. He continued to molest her until just prior to her 11th birthday. Hernandez weighed 210 pounds and while the record does not disclose V.'s size at the time of the molestations, she was described as "very slight of frame" at the time of trial.

Hernandez's authority appeared unquestionable. V. was a young victim molested by her father in the family home. The bulk of the molestations occurred when V.'s mother was attending Zumba classes. Hernandez took V. to his bedroom and sometimes to the bathroom where he sexually assaulted her. The evidence establishes Hernandez psychologically coerced V. to obey him. Hernandez continued to molest her using the same general pattern and V. felt helpless to prevent it. Although there is no evidence Hernandez expressly threatened V. with harm, physically restrained her, or verbally warned her of harm, there is sufficient evidence that telling her not to tell her mother about the molestations constituted an implicit threat to comply with his demands. V.

testified that she was scared and wanted Hernandez to stop but she also feared Hernandez would be taken away if she reported the molestations.

Hernandez relies on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*), and argues the facts here are directly analogous to those the *Espinoza* court held were insufficient to establish duress. *Espinoza* is distinguishable. The victim in *Espinoza* was 12 years old—the molestations here began when V. was eight years old. *Espinoza,* itself, acknowledged that where the defendant is a family member and the victim is young, the position of dominance and authority of the defendant and his continuous exploitation of the victim are relevant to the existence of duress. (*Id.* at pp. 1319-1320.)

The evidence clearly shows that Hernandez used duress to commit the aggravated sexual assaults. "'This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent.' [Citation.]" (*Veale, supra,* 160 Cal.App.4th at p. 48.)

## II. Trial Court's Remarks Did Not Reflect Its Actual Conclusions or Reasoning

Hernandez contends the trial court "demonstrably misunderstood" the law with regard to duress. The contention has no merit.

### A. *Background*

After the prosecution and defense rested, the trial court issued a tentative ruling stating its intention to find Hernandez guilty of four counts of sexual assault, but to find the use of force or duress only as to count 1. The trial court noted a "split of authority" on the issue of duress. The trial court preferred the reasoning in *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1250-1251 (*Hecker*) ["Psychological coercion without more does not establish duress"] over that in *Veale, supra,* 160 Cal.App.4th at page 49 [where the victim is nine years old and the defendant is her father, "in all but the rarest cases duress will be present"]. However, the trial court made it clear that it did not want its tentative to be interpreted as its ruling and recessed to review the case law.

6

After the recess, the trial court stated that *Hecker* "appears to have been overturned" and added "if *Hecker* is still good law . . . it certainly is not well received by all of the other courts." The trial court then asked the prosecution to identify the facts which supported a finding of duress for counts 3, 5, and 7. The prosecutor emphasized that Hernandez as V.'s biological father exploited her vulnerability. He seized the opportunity to sexually assault her while her mother was at Zumba classes and ordered her not to disclose it to her mother. The prosecutor further argued that V.'s testimony that she was helpless to prevent Hernandez from assaulting her and that she "knew that it was going to continue and she just let him do it" was a form of psychological coercion.

In making its ruling, the trial court stated that "a fair reading of *Hecker* and the cases that have followed it" indicated that it was "not the law in California." The court stated "some courts [had] disapproved of *Hecker*" and it "[stood] alone." The court found, pursuant to *Veale* and *Cochran* that the "totality of the circumstances . . . including the age of the victim [and] the relationship to the defendant" indicated duress.

### B.      Applicable Legal Standards

Where a *jury's* guilty verdict may rest on a legally correct theory or a legally incorrect theory, the conviction must be reversed unless the reviewing court can determine from the record that the conviction necessarily rested on the legally correct theory. (*People v. Perez* (2005) 35 Cal.4th 1219, 1233; *People v. Morales* (2013) 212 Cal.App.4th 583, 595.) However, this rule has no application when we review a verdict returned by a trial court sitting without a jury.

As a broad general proposition, cases have stated that a trial court's remarks in a bench trial cannot be used to show that the trial court misapplied the law or erred in its reasoning. (*People v. Grana* (1934) 1 Cal.2d 565, 571; *People v. Simmons* (1971) 19 Cal.App.3d 960, 964.) These statements are founded on the principle that, in a criminal bench trial, the trial court is not required to provide a statement of decision and that any explanation of his or her decision a trial judge provides is not part of the record on appeal. (*People v. Grana, supra,* 1 Cal.2d at p. 571.)

7

To the extent that the trial court's statements were ambiguous, the appellate court is "compelled to indulge in that interpretation that will result in upholding the action of the trial judge as long as that action is reasonable." (*People v. Megladdery* (1940) 40 Cal.App.2d 748, 774, overruled on other grounds in *People v. Simon* (2001) 25 Cal.4th 1082, 1093, and *People v. Posey* (2004) 32 Cal.4th 193, 205.)

### C.    Analysis

In *Hecker*, the defendant had anal and vaginal intercourse with his 13-year-old stepdaughter. She testified that during a previous molestation she had unsuccessfully tried to resist, but she did not resist on this occasion. The sex acts "hurt." (*Hecker, supra*, 219 Cal.App.3d at p. 1241.) She suffered both vaginal and anal injuries from these acts. The defendant warned her not to reveal the molestations because it would hurt his marriage and his career. (*Id*. at p. 1242.) She testified that she felt psychological pressure and was afraid. (*Ibid.*)

The trial court was in fact correct in determining that courts have questioned the reasoning of *Hecker* which held that "'[p]sychological coercion' without more does not establish duress" and that "[a]t a minimum there must be an implied threat of 'force, violence, danger, hardship, or retribution.'" (*Hecker, supra,* 219 Cal.App.3d at pp. 1250-1251.) *Espinoza* relied in part on *Hecker*, but after *Espinoza* was decided, the *Cochran* court—the same court that decided *Hecker*—disapproved *Hecker* in part, finding it "overly broad" and concluding that psychological coercion could establish duress. (*Cochran, supra,* 103 Cal.App.4th at p. 15.) *Veale* endorsed *Cochran* and its rejection of *Hecker's* reasoning, reiterating that when a young victim is molested by her father in the family home "in all but the rarest cases duress will be present." (*Veale, supra,* 160 Cal.App.4th at p. 49, citing *Cochran, supra,* at p. 16, fn. 6.)

Hernandez focuses on the trial court's comment that *Hecker* was not the law in California. Citing no legal authority, he contends that a trial judge's understanding of the law is analogous to a jury receiving proper instructions. We need not dwell on the trial court's comments which we do not consider in assessing whether Hernandez's conviction

8

was correct. As stated in *People v. Grana, supra*, 1 Cal.2d at page 571: "In a criminal case tried by a judge alone an appellate tribunal will affirm or reverse the judgment of conviction upon errors of law alone. If errors of law in admitting or rejecting evidence have prevented a fair trial, or if the evidence does not support it, the judgment of conviction will be reversed. The court will not examine the trial court's remarks to discover whether or not it mentally applied the correct law as the case unfolded itself, or whether after completion of the evidence and argument it applied the correct law or reasoning in arriving at a judgment." (See also *People v. Towner* (1968) 259 Cal.App.2d 682, 685 ["The inquiry on appeal is whether, in fact, the decision of the trial court was correct, not the reasons he may have stated for making it"].)

Although the trial court misspoke, we affirm the result because the task of an appellate court is to "review the correctness of the challenged ruling, not of the analysis used to reach it." (*In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1045.) As discussed above (see part I, *ante.*), the evidence of duress was sufficient to support convictions for the forcible sexual assaults in counts 3, 5, and 7.

## III. Presentence Custody Credit

In his opening brief, Hernandez claimed the trial court erred in denying him the appropriate presentence custody credit. On June 11, 2014, we granted Hernandez's motion to augment the record to include a revised sentencing abstract and minute order in this case. The revised abstract and order show that Hernandez was granted the appropriate custody credit on May 22, 2014. Since Hernandez was given the appropriate presentence custody credit, the claims are moot.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J. *
                                  FERNS

We concur:

_____, P. J.
          BOREN

_____, J.
          CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.