Filed 4/17/25  P. v. Patrick CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B334444 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA175893) |
| v. | |
| ALONZO JUNE PATRICK, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

In 2000, a jury convicted Alonzo June Patrick of first degree murder based on a drive-by shooting in which Patrick was the driver and his passenger was the shooter. In 2022, Patrick petitioned for resentencing under Penal Code section 1170.95.[1] He appeals the denial of his petition for resentencing after an evidentiary hearing. Patrick argues the trial court applied the wrong standard of proof and failed to act as an independent factfinder in determining he acted as a direct aider and abettor with intent to kill. We affirm the trial court order.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

On the afternoon of November 19, 1991, Patrick was driving near Crenshaw High School in Los Angeles. He and his passenger were members of a gang. Rival gang members fired shots at Patrick's car. He immediately made a U-turn and drove back to the area where the shots had been fired. While Patrick slowed the car, his passenger shot six times into a crowd. One shot struck and killed a bystander, Larry Christon.

---

[1] All further undesignated statutory references are to the Penal Code. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the statute as section 1172.6 for the remainder of this opinion.

[2] We previously granted Patrick's Request for Judicial Notice of the record from his direct appeal, which includes transcripts from his trial. The resentencing court relied on the trial transcripts in denying Patrick's resentencing petition. We take the facts from the evidence admitted at Patrick's trial and at the section 1172.6 evidentiary hearing.

*Prior Proceedings*

In September 2000, Patrick was tried by jury for Christon's murder. The evidence at trial established the following:

Alfonzo Lezine testified that Patrick, his fellow gang member, told him about the drive-by shooting. Patrick said that after he and a passenger were shot at, Patrick turned the car around and his passenger fired shots. Patrick initially bragged to Lezine about his role in the shooting. At trial, Lezine testified that Patrick also said he "didn't mean [for it] to happen like that." However, Lezine admitted that his initial written statement provided to an FBI agent did not mention this comment.

FBI Special Agent Ronald Twersky testified that on June 30, 2000, he interviewed Lezine. Lezine provided a handwritten statement recounting what Patrick told him. The statement was admitted into evidence at trial. According to the written statement, Patrick told Lezine " 'the whole story,' " " 'bragged about it,' " and said that after he and his passenger were shot at, " 'they drove around and came back and [Patrick's passenger] shot [the victim].' "

Bystander Danny Owens testified that he was at a gas station when he observed someone fire two or three shots towards Patrick's car.[3] Owens saw the car disappear from view and return within approximately 20 seconds to the location of the shooting. He saw a passenger sitting on the window ledge of the door of the car. The passenger shot at a group of people and the car then drove away.

Another eyewitness, Compton Charles, heard two gunshots. Approximately 15 seconds later, Charles saw Patrick's car

---

[3]     Patrick later admitted it was his car in a written declaration attached to his resentencing petition.

approach and slow down, even though it had the right of way and there was no stop sign or traffic in front of it. The car slowed from about 20 miles per hour to 15 miles per hour. Charles saw a passenger emerge from the window and shoot multiple shots at a crowd of people, then the car continued driving.

California Highway Patrol Officer Jeff Loftin testified that after Patrick was arrested for using false identification, he confessed that he had done so because he was involved in a murder. Patrick told Loftin that he was driving a car with a passenger when he drove by a group of individuals who fired shots at them. He turned the car around and his passenger shot at the group, and he saw his passenger had shot someone in the head. When Loftin asked Patrick why he turned the car around, he replied, " 'So my passenger could,' " but he did not finish his sentence.

In a statement read into evidence at trial, Patrick's friend, Danielle Harris, told an FBI agent that Patrick had attempted to persuade her to testify falsely that she was at the scene of the murder and Patrick's passenger had not "shot back."[4]

At trial, the prosecution proceeded on a theory that Patrick was the driver and that he aided and abetted his passenger's shooting of Christon. The trial court instructed the jury on direct aiding and abetting as well as a theory of murder as a natural and probable consequence of the commission of assault with a firearm. The jury was also instructed on first degree drive-by murder under section 189 and the special circumstance of intentional discharge of a firearm from a motor vehicle under section 190.2, subdivision (a)(21).

---

[4] At trial, Harris's written statement was admitted not for its truth, but as evidence of Patrick's consciousness of guilt.

The jury found Patrick guilty of the first degree murder of Christon, found true the special circumstance that "the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person and persons outside the vehicle with the intent to inflict death," and found true the allegation that a principal in the offense was armed with a firearm (§§ 187, subd. (a), 190.2, subd. (a)(21), 12022, subd. (a)(1); count 1).

For the murder of Christon, the court sentenced Patrick to life without the possibility of parole, plus one year on the section 12022, subdivision (a)(1) allegation, to run consecutive to determinate sentences on other counts.[5]

In February 2002, on direct appeal, this Court affirmed the judgment. (*People v. Patrick* (Feb. 25, 2002, B147837) [nonpub. opn.].)

### *Petition for Resentencing*

In September 2019, Patrick filed a habeas petition. In relevant part, he asserted he was eligible for resentencing of his first degree murder conviction under Senate Bill No. 1437 (2017–2018 Reg. Sess.) because he was not the actual shooter. The court appointed counsel.

---

[5] In addition to the murder of Christon (count 1), the operative third amended information charged Patrick with attempted murder, attempted robbery, and carjacking (counts 2–4), stemming from an incident in June 1998 that was unrelated to Christon's murder. The People originally charged these counts in a separate information. In July 1999, the trial court granted the prosecution's motion to consolidate the four charges for all proceedings, including trial. Counts 2 through 4 are not at issue in this appeal.

In December 2019, the People filed an opposition, construing part of the habeas petition as a petition for resentencing under section 1172.6 and arguing that it should be denied because (1) the jury found the special circumstance true that the drive-by murder was committed by shooting intentionally with the intent to inflict death, and (2) Patrick was a major participant in a felony drive-by shooting who acted with reckless indifference to human life by aiding and abetting an accomplice to shoot at people outside the car.

In February 2022, Patrick's appointed counsel filed a new petition for resentencing under section 1172.6. The petition asserted that Patrick was convicted on a now-invalid natural and probable consequences theory and the special circumstance of discharge of a firearm from a motor vehicle did not require a finding that Patrick intended to kill. Attached to the petition were excerpts from the trial transcript, the relevant information, jury instructions, and the abstracts of judgment. In addition, Patrick re-submitted a declaration he had originally attached to the habeas petition. The declaration stated in relevant part:

> "2. On November 19, 1991, I was involved in a drive by shooting where I was the driver. We were near Crenshaw High School. The incident caused the unfortunate death of a young man.
> "3. Without trying to minimize the severity of the crime; I was near Crenshaw High School when 2 gun shots were fired at my car by rival gang members. I then made a U-turn, returned to the area of the parking lot where the shots had been fired and the passenger Hadise Mobley returned fire.
> "4. The passenger fired the shots over the top of my car. One of the shots unfortunately killed a young man . . . .

6

"5.    I believe the court should consider the
circumstances of this crime and come to the
conclusion that I never instructed the passenger to
kill someone, nor did I provide him with the weapon
that he used to commit the crime. . . ."

In October 2022, Patrick filed a supplemental request for resentencing under section 1172.6, arguing he had stated a prima facie case for relief based on his conviction for murder and the natural and probable consequences jury instruction, and requesting that the court set an evidentiary hearing. The trial court granted the request.

On July 14, 2023, the parties appeared for an evidentiary hearing. Patrick's counsel argued there was insufficient evidence of intent to kill based on the jury instructions. The People argued that the jury instructions were irrelevant because, regardless of Patrick's intent to kill, he could still be prosecuted under a felony murder theory because he acted as a major participant with reckless indifference to human life. The court responded, "the question in a[ ] [section] 1172 hearing is is there sufficient evidence remaining if you take out anything, such as foreseeable consequences, is there enough to retry him. [¶] So even if there was a mistake— [¶] This is not an overall habeas corpus as to the bad jury instruction. So that's the only question the court has to answer." Patrick's counsel then submitted on the "state of the record." The People did not submit any new evidence at the hearing.

On July 26, the court informed the parties that it wanted to review the complete trial transcripts before it ruled. The People submitted the complete transcripts, and, on August 11, the court denied Patrick's petition.

The court's written ruling observed that Patrick was convicted of first degree murder and he admitted his participation in the crime in the declaration attached to his petition. The court also recited the evidence showing that Patrick had told Lezine of his involvement. The court referenced the eyewitnesses' testimony and Harris's statement. Finally, the court noted ballistics evidence establishing that two shots were fired at Patrick's car and his passenger fired six shots.

The court determined that Patrick "can still be prosecuted under the current state of the law, under two possible theories[:] [¶] (1.) As a person who was not the actual killer, but with the intent to kill, aided and abetted . . . or assisted in [*sic*] the actual killer in the commission of murder in the first degree (Penal Code section 189[(e)](2); or [¶] (2.) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . [.] As previously set forth petitioner drove back to the scene of the shooting in a manner that allowed his co-defendant to shoot into a group of people. His actions (which he admitted) are the very definition of assisting and abetting. [¶] Further, he was clearly a major participant in the underlying felony (see *People v. Banks* (2015) 61 Cal[.]4th 788[,] and *People v. Clark* (2016) 63 Cal[.]4th 522)."

The court also reasoned: "Petitioner admitted his return to the scene of the shooting was done in such a manner as to enable his co-defendant to shoot into a group of people. His actions facilitated the shooting, and nothing to prevent it [*sic*] and his own actions intentionally allowed the shooter to kill. He then assisted the shooter in getting away."

The court denied the petition, concluding, "The People have proven beyond a reasonable doubt that petitioner could be

prosecuted under the current state of the law for first degree, willful and premedi[t]ated murder."

Patrick filed a timely notice of appeal.

## DISCUSSION

**I.     Senate Bill No. 1437 and Section 1172.6**

Senate Bill No. 1437 significantly narrowed accomplice liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and by limiting the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*), superseded by statute on other grounds by Sen. Bill No. 775 (2021–2022 Reg. Sess.); (Stats. 2021, ch. 551).)

The bill amended section 188 by adding the requirement that, except as stated in section 189, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  It amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of certain enumerated felonies in which a death occurs is liable for felony murder only if the person (1) was the actual killer, (2) was not the actual killer but, with the intent to kill, " 'aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree,' " or (3) the person was a " 'major participant in the underlying felony and acted with reckless indifference to human life,' " as described in section 190.2, subdivision (d).  (*Gentile*, *supra*, 10 Cal.5th at p. 842; § 189, subd. (e).)

9

"[A] principal in a murder, including an aider or abettor, may still be criminally liable if that individual personally possesses malice aforethought, whether express or implied." (*People v. Harris* (2024) 105 Cal.App.5th 623, 631; *People v. Silva* (2023) 87 Cal.App.5th 632, 639–640; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 [Sen. Bill No. 1437 did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator' "].)

Section 1172.6 sets forth a procedure that allows a person convicted of a qualifying offense under the former law to petition for resentencing if the person could no longer be convicted of the offense under amended sections 188 or 189. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847; see also Sen. Bill No. 775, § 2 [further amending statutory procedures in § 1172.6].) If the court determines the petitioner has made a prima facie case for relief, the court must issue an order to show cause. (§ 1172.6, subd. (c).)

Within 60 days, " 'the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under state law as amended by Senate Bill No. 1437 . . . .' " (*People v. Njoku* (2023) 95 Cal.App.5th 27, 41; § 1172.6, subd. (d)(1), (3).)

At the evidentiary hearing, the trial court determines whether "the petitioner committed [the underlying crime] under a still-valid theory. . . ." (*People v. Clements* (2022) 75 Cal.App.5th 276, 294 (*Clements*).) The trial court serves as "a fact finder tasked with holding the People to the beyond a reasonable doubt standard . . . ." (*Id*. at pp. 294–295.) It " 'must

impartially compare and consider all the evidence that was received throughout the entire trial' and determine whether that 'proof . . . leaves you with an abiding conviction that the charge is true.' [Citations.]" (*Id*. at p. 295.) Under section 1172.6, subdivision (d)(3), "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3); *Clements*, at pp. 294–297.)

## II. Patrick Has Not Established That the Trial Court Erred by Denying his Petition Based on Its Finding That Patrick Was a Direct Aider and Abettor

Patrick contends the trial court applied the wrong standard of proof and failed to act as a factfinder when it found him ineligible for resentencing.[6] He asserts that instead of

---

[6] The trial court found that Patrick was liable under current law as a direct aider and abettor with intent to kill *and* as a major participant in an underlying felony who acted with reckless indifference to human life. Here, we only consider the former theory because Patrick argues, and the People concede, that the trial court erred in finding the evidence established Patrick's liability on a felony murder theory. Felony murder requires evidence that the murder was committed in the perpetration of one of several enumerated felonies. There was no such evidence in this case. (§ 189, subd. (e)(3); cf. *People v. Burgess* (2023) 88 Cal.App.5th 592, 606.) The People acknowledge that assault with a firearm is not a predicate felony for first degree felony murder. (See also *People v. Chavez* (2004) 118 Cal.App.4th 379, 385–387 [drive-by-shooting is not an enumerated felony for purposes of felony murder rule].) To the extent the trial court was suggesting Patrick is guilty of second degree felony murder, we note that, assuming the theory continues to be viable after Senate Bill No. 1437 (see, e.g., §§ 188,

11

independently determining whether the People established Patrick's guilt beyond a reasonable doubt under a valid legal theory, the trial court merely reviewed the record to evaluate whether there was substantial evidence for a trier of fact to find him guilty. Whether the court applied the correct legal standard is an issue we review de novo. (See, e.g., *Tufeld Corp. v. Beverly Hills Gateway, L.P.* (2022) 86 Cal.App.5th 12, 33.)

At the evidentiary hearing, the prosecution is required to prove "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The court is the factfinder and must determine whether the People have met the beyond a reasonable doubt standard. (*Clements*, *supra*, 75 Cal.App.5th at p. 294.)

Patrick contends the trial court applied the wrong legal standard based on three statements the court made during the proceedings. First, he cites the court's statement during the July 2023 evidentiary hearing that "the question in [a section] 1172 hearing is is there sufficient evidence remaining if you take out anything, such as foreseeable consequences, is there enough to retry him." Second, Patrick points to a portion of the trial court's written ruling in which it discussed the convictions for attempted

---

subd. (a)(3), 189, subd. (e); *In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1142, fn. 3), the parties agree that even under prior law, neither assault with a firearm nor felony drive-by shooting would qualify as a predicate for felony murder. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200 [felonies that are assaultive in nature merge with homicide and cannot be predicate for second degree felony murder].)

murder, attempted robbery, and carjacking, none of which were at issue in the section 1172.6 petition. The court noted that Patrick conceded: " 'There was sufficient evidence to sustain a conviction,' " as to those counts, quoting from Patrick's habeas petition. The ruling stated this concession was "consistent with defendant's decision not to contest the sufficiency of evidence or otherwise make any substantive challenges in his direct appeal of his convictions." Third, Patrick relies on the trial court's statement of its ultimate conclusion: "The People have proven beyond a reasonable doubt that petitioner could be prosecuted under the current state of the law for first degree, willful and premeditated murder." We find no error.

It is a fundamental rule of appellate review that an appealed judgment or order is presumed correct, and error must be affirmatively shown. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Jameson*, at p. 609.) A corollary to this rule is that " ' "a trial court is presumed to have been aware of and followed the applicable law." ' [Citation.]" (*In re Julian R.* (2009) 47 Cal.4th 487, 499 (*Julian R.*).)

Moreover, " ' "[n]o rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' [Citation.]" (*People v. Turner* (2020) 10 Cal.5th 786, 807.)

13

In the context of bench trials, "[a]s a broad general proposition, cases have stated that a trial court's remarks in a bench trial cannot be used to show that the trial court misapplied the law or erred in its reasoning. (*People v. Grana* (1934) 1 Cal.2d 565, 571; [citations].) These statements are founded on the principle that, in a criminal bench trial, the trial court is not required to provide a statement of decision and that any explanation of his or her decision a trial judge provides is not part of the record on appeal. [Citation.] [¶] This broad proposition has been subjected to an important limitation. Without discussing whether a trial judge's statements are part of the record on appeal, cases decided after *People v. Grana* have held that we may nonetheless consider a judge's statement when, *taken as a whole,* the judge's statement discloses an incorrect rather than a correct concept of the relevant law, 'embodied not merely in "secondary remarks" but in [the judge's] basic ruling.' [Citations.]" (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1302 (*Tessman*).) While an evidentiary hearing pursuant to section 1172.6 is not a bench trial, we find this general proposition applicable.

Applying these principles, we disagree that the three statements Patrick has identified demonstrate that the trial court applied an incorrect legal standard when ruling on his petition. As an initial matter, we must presume that the trial court was aware of the law and its role as an independent factfinder at the evidentiary hearing. Effective January 1, 2022, amendments to section 1172.6 clarified that the prosecution at a resentencing hearing has the burden of proof to establish beyond a reasonable doubt that the petitioner is guilty of murder, a substantial evidence finding is insufficient to prove beyond a

14

reasonable doubt that the petitioner is ineligible for resentencing, and the trial court must act as the factfinder.  (§ 1172.6, subd. (d)(3); Stats. 2021, ch. 551, § 1, subd. (c); *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123; *Clements, supra*, 75 Cal.App.5th at pp. 294, 297; *People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).)

Thus, while there was initially a split of authority regarding whether the trial court applied a substantial evidence test or acted as an independent factfinder (see, e.g., *Garrison, supra*, 73 Cal.App.5th at p. 745 [describing split]), the Legislature resolved any uncertainty over a year and a half before the trial court ruled on Patrick's petition.  Courts had similarly addressed the issue in published opinions.  (See, e.g., *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3 [December 2022]; *Clements, supra*, 75 Cal.App.5th at pp. 294, 297 [February 2022]; *Garrison*, at p. 745 [December 2021].)  Indeed, Patrick's October 2022 supplemental request for resentencing cited the amendments to section 1172.6 from Senate Bill No. 775, and specifically recited the relevant portions of section 1172.6 which set forth the prosecutor's burden and the insufficiency of a substantial evidence finding.  The trial court expressly indicated it "read all the papers filed by both sides."  We presume that the court followed that law.  (*Julian R., supra*, 47 Cal.4th at p. 499.)

The trial court's statement at the evidentiary hearing about "sufficient evidence" does not indicate the trial court misapplied the law.  The court responded to counsel's argument that "there may not have been sufficient evidence for an intent to kill based on the [jury] instructions."  The court noted that at the evidentiary hearing stage, the jury instructions were not relevant.  The court referred to the need to evaluate the evidence

15

that remained after evidence supporting a natural and probable consequences theory was eliminated.  The court's oral statement was neither inherently incorrect, nor an indication that in its subsequent written ruling the court applied an improper substantial evidence review.  Further, even if the trial court's comment could be construed as an incorrect summary of the law, the statement was a " 'secondary remark[ ],' " rather than an element in the trial court's ultimate ruling.  (*Tessman*, *supra*, 223 Cal.App.4th at p. 1302.)

The second statement at issue referenced the attempted murder, attempted robbery, and carjacking convictions, and was entirely unrelated to the murder count for which Patrick sought resentencing.  Patrick provides no basis for us to conclude that the statement, apparently made as background information about the prior proceedings, demonstrated error in the court's determination of Patrick's eligibility for resentencing on the murder count.

Finally, as to the third statement, Patrick correctly states that the proper standard is not whether he " 'could be prosecuted' "—the words the trial court used—but rather whether the prosecution proved that he " 'is guilty' " under current law. (§ 1172.6, subd. (d)(3).)  However, we conclude that, taken as a whole, the statement did not disclose an incorrect concept of the law.  (*Tessman*, *supra*, 223 Cal.App.4th at p. 1302.)

The trial court provided a detailed recitation of the evidence admitted at the evidentiary hearing, including evidence that post-dated the original trial.  The court unequivocally concluded that Patrick's actions were "the very definition of assisting and abetting."  Although the court erred in concluding a felony murder theory was viable, its statement that Patrick "was

16

clearly a major participant in the underlying felony," illustrates that the court was acting in its role as an independent factfinder, not merely determining this was a conclusion that *could* be drawn from the evidence. The court further explained its ruling: "In the instant case petitioner admitted his return to the scene of the shooting was done in such a manner as to enable his co-defendant to shoot into a group of people. His actions facilitated the shooting, and [did] nothing to prevent it and his own actions intentionally allowed the shooter to kill. He then assisted the shooter in getting away." These were factual findings, not merely statements of what a jury or other finder of fact could have found. These findings, along with the trial court's references to the People's burden of proof and the reasonable doubt standard, indicate the trial court applied the correct legal standard and independently found the People met their burden to show Patrick was guilty, beyond a reasonable doubt, of murder on a direct aiding and abetting theory.

*Garrison* does not compel a different result. In *Garrison*, the trial court ruled on the defendant's petition for resentencing before the 2022 amendments to section 1172.6, during a period when the role of the trial court and the standard of proof were unsettled legal issues. In ruling on the petition, the trial court used the language: " 'I also find beyond a reasonable doubt that Mr. Garrison could have been convicted as the actual shooter and actual killer in this felony murder case.' " (*Garrison*, *supra*, 73 Cal.App.5th at p. 741.) On appeal, the People conceded the trial court had applied an incorrect substantial evidence standard. (*Id.* at p. 745, fn. 6.) The reviewing court, however, did not expressly accept the concession, instead concluding that "[*a*]*ssuming* Garrison is correct that the trial court applied the

17

wrong standard of proof at the section 1170.95, subdivision (d)(3) hearing, Garrison cannot demonstrate any prejudicial error." (*Id.* at p. 745, italics added.)  The *Garrison* court did not decide whether the trial court's language indicated it applied the wrong standard of proof, and, even if it had, this case presents different circumstances since the trial court's ruling occurred after the Legislature and caselaw clearly established the proper standard of proof and the trial court's role in the process.

Despite the trial court's imprecise language here, we assume it was aware of and followed the applicable law.  (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)  Patrick has failed to meet his burden of establishing affirmative error.  We therefore reject his claim that the trial court applied the wrong standard of proof and failed to act as a factfinder when it denied his resentencing petition.

18

## DISPOSITION

The order denying Patrick's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.